BOARD OF EDUCATION OF CITY OF CHICAGO *et al.*, Plaintiffs-Appellants, v. A, C AND S, INC., *et al.*, Defendants-Appellees.—BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 211 *et al.*, Plaintiffs-Appellants, v. ABITIBI ASBESTOS MINING COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 86—817

Opinion filed June 1, 1988.—Rehearing denied July 20, 1988.

Meites, Frackman & Mulder and Hager & Collins, both of Chicago (Thomas R. Meites, Lynn Sara Frackman, Michael M. Mulder, Joan H. Burger, Patricia Whitten, Susan Einspar-Wayne, Karen Gatsis Anderson, John Hager, and Elaine K. B. Siegel, of counsel), for appellant Chicago Board of Education.

Jerome J. Duchowicz and Edward J. Matushek III, both of Haskell & Perrin, of Chicago, for appellee A&M Insulation Company.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Robert L. Martier, of counsel), for appellee Owens-Corning Fiberglass Corporation.

Gorham, Metge, Bowman, & Hourigan, of Chicago (Edward H. MacCabe, of counsel), for appellee John J. Moroney & Company.

Williams & Montgomery, Ltd., of Chicago (Karl R. Fink, of counsel), for appellee Standard Insulation.

Katten, Muchin, Zavis, Pearl & Galler, of Chicago (Patrick J. Lamb and James C. Murray, of counsel), for appellee GAF Corporation.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Cynthia A. Meister, of counsel), for appellee A, C & S, Inc.

Schiff, Hardin & Waite, of Chicago (Robert Riley, Catherine Masters Epstein, and Robert Campbell, of counsel), for appellee Owens-Illinois Inc.

Arnstein, Gluck, Barron & Milligan, of Chicago (Louis A. Lehr, Patrick F. Geary, and Theodore T. Schule, of counsel), for appellees Hill-Behan Lumber Company and J. J. Barney Lumber Company.

Keevers & Hittle, of Chicago (Paul M. Hummel, of counsel), for appellee Eagle Picher Industries.

Keck, Mahin & Cate, of Chicago (James T. Otis, Clarence O. Redman, James H. Ryan, and Robert W. Pratt, of counsel), for appellee U.S. Gypsum Corporation.

McDermott, Will & Emery, of Chicago (Walter M. Jones and Lois J. Lipton, of counsel), for appellees Cassiar Mining Corporation, UniRoyal, Inc., and Georgia Pacific Corporation.

Nolan, O'Malley & Dunne, of Chicago (S. Robert Depke, of counsel), for appellee Thompson-Hayward Chemical Company.

Kirkland & Ellis, of Chicago (John H. Morrison, of counsel), for appellee Pfizer, Inc.

Sweeney & Riman, Ltd., of Chicago (Harry G. Sachrison, Jr., of counsel), for appellee Keene Corporation.

Karon, Morrison & Savikas, Ltd., of Chicago (Nancy Schaefer and David S. Fleming, of counsel), for appellee National Gypsum Company.

Schoen & Smith, of Chicago (David M. Smith, of counsel), for appellee Pittsburg Corning Corporation.

Chadwell & Kayser, Ltd., of Chicago (J. Michael Newton, of counsel), for appellee Raymark Industries.

Segal, McCambridge, Singer & Mahoney, Ltd., of Chicago (Edward McCambridge, of counsel), for appellee H. K. Porter Company.

Rooks, Pitts & Poust, of Chicago (Jerry Groark, Doug Roller, Terrance E. Iiwala, and William Seith, of counsel), for appellee Chicago Fire Brick Company.

John B. Grogan, Ltd., of Chicago (Susan Gunty and John B. Grogan, of counsel), for appellee Grant Wilson, Inc.

Bell, Boyd & Lloyd, of Chicago (Frank Heap and John J. Verscaj, of counsel), for appellee W. R. Grace Company.

Baker & McKenzie, of Chicago (Patrick Maloney and Daniel Cheely, of counsel), for appellee Fiberboard Corporation.

Wildman, Harrold, Allen & Dixon, of Chicago (Edward J. Melia, of counsel), for appellees Cumbustion Engineering, Inc. and Certainteed Corporation.

Kurnik & Cipolla, of Arlington Heights (James S. Stephenson, of counsel), for appellee Nicolet, Inc.

Michael W. Rathsack, of Chicago, for appellee Mauritzon, Inc.

Connelly & Mustes, of Chicago (Michael P. Connelly and John W. Potter, Jr., of counsel), for appellee Celotex & Carey Canada, Ltd.

James L. Hafele, P.C., of Peoria, for appellee U.S. Mineral Products.

Johnson, Cusack & Bell, Ltd., of Chicago (Jack Riley, of counsel), for appellee Proko Industries, Inc.

O'Connor & Schiff, of Chicago (William Brittan, of counsel), for appellee Iten Industries, Inc.

French, Rogers, Kezelis & Kominiarek, of Chicago (Robert E. Douglas, of counsel), for appellee Armstrong World Industries, Inc.

Burke, Bosselman, Frenogel, Weaver & Ryan, of Chicago (Edward F. Ryan, Keith A. Klopfenstein, and Victor P. Filippini, Jr., of counsel), for appellee Union Carbide Corporation.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Robert Soderstrom, Shaun McParland, and Stephen T. Grossmark, of counsel), for appellee Flintkote Company.

Gozdecki & Zido, of Chicago (Eugene R. Gozdecki, of counsel), for appellee C. Tenant, Son & Company of New York.

Gooding & Schroeder, of Geneva (John L. Schroeder, of counsel), for appellee Wilken Insulation Company.

Pretzel & Stouffer, Chartered, Law Offices of Thomas J. Keevers, Hannafan & Handler, Ltd., Conklin & Adler, Ltd., Peterson, Ross, Schloerb & Seidel, Levy & Erens, Holleb & Coff, Ltd., Hager & Collins, Cowan, Crowley & Hager, Robert Bell, Jr., Donald J. O'Brien, Jr., and James Dower, all of Chicago, and Murphy, Hupp, Foote & Mielke, of Aurora, H. Case Ellis, of Crystal Lake, and Moore, Costello & Hart, of St. Paul, Minnesota (John V. Smith, William C. Murphy, Susan G. Castagnoli, Steven P. Handler, William A. Lockhart, Robert M. Wigoda, Robert W. Lucas, Michael M. Lane, Ellen J. Kerschner, Richard R. Ryan, Keith C. McDole, Steven A. Kadish, William I. Goldberg, Jeffrey H. Hornstein, John Hayes, and John Hager, of counsel), for other appellees.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for *amicus curiae* the People.

Judson H. Miner, Corporation Counsel, of Chicago (Deborah L. Thorne, Assistant Corporation Counsel, of counsel), for other *amicus curiae*.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, 34 Illinois public school districts are required by the Asbestos Abatement Act (Act) (Ill. Rev. Stat. 1985, ch. 122, par. 1401 *et seq.*) to replace all asbestos-containing products in their buildings, for which they may receive some reimbursement from the State. Plaintiffs seek full reimbursement and additional damages from the 78 named defendants, which either mined, manufactured, installed or sold the product.

In a consolidated action, the trial court dismissed plaintiffs' complaints with prejudice and without leave to amend. Plaintiffs appeal from the dismissal of the complaints which, with some duplication, stated numerous causes of action, including various allegations regarding strict liability, negligence, restitution, a private right of action under the Asbestos Abatement Act, consumer fraud, breach of warranty, negligent misrepresentation, fraudulent misrepresentation, and concert of action. Plaintiffs also contend that the trial court erred in finding the action was barred by the statute of limitations and erred in denying their motion to amend the pleadings.

When reviewing a motion to dismiss, all well-pleaded facts must be taken as true and all reasonable inferences are drawn in favor of the opponent. (*United Air Lines, Inc. v. CEI Industries of Illinois, Inc.* (1986), 148 Ill. App. 3d 332, 499 N.E.2d 558.) A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved which would entitle plaintiffs to relief. *Bagel v. American Honda Motor Co.* (1985), 132 Ill. App. 3d 82, 477 N.E.2d 54.

We believe that the trial court misconceived the nature of the action. The error reveals itself most clearly in the strict liability and negligence counts, but also undermines the other dismissal of the actions. Plaintiffs allege both strict liability and negligence in tort. In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, the court held that the policy considerations addressed in strict liability cases also apply to negligence actions. Thus, we treat these two counts together.

The trial court dismissed these causes of action on the basis that plaintiffs failed to allege any actual property damage or personal injury, and thus alleged only economic loss, which is not recoverable in tort, and that the buildings in question were not considered "products" under a products liability theory.

In *Moorman*, the court held that under a strict liability in tort theory recovery must be denied for solely economic losses. (Accord *East River Steamship Corp. v. Transamerican Delavel Inc.* (1986),

476 U.S. 858, 90 L. Ed. 2d 865, 106 S. Ct. 2295.) The remedy for economic loss lies in contract, and not in tort law.

■■ Economic loss is defined as damages for inadequate value, costs of repair and replacement of the product, or consequent loss of profits. The diminution in value occurs because the product is inferior in quality and does not work for the general purpose for which it was manufactured and sold. *Moorman*, 91 Ill. 2d at 82, quoting Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966).

■■ Generally, economic losses alone, with no allegation of other damage, cannot support a tort cause of action. A safety-insurance policy underlines tort law. (*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, cited in *Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443.) Tort law traditionally protects individuals and property from physical harm. The strict liability in tort theory focuses on the unreasonably dangerous nature of the product. (*Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) "[T]he essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property." (*Moorman*, 91 Ill. 2d at 81.) In contrast, the dangerous nature of a product has no particular relevance to economic loss. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324; *Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443.) The manufacturer bears the responsibility of producing goods which match a standard of safety defined in terms of conditions that create unreasonable risks of harm. *Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443.

■■ No single test has been developed to easily identify in any given tort case the demarcation between nonrecoverable economic loss and recoverable personal injury or property damages. (See *Kishwaukee Community Health Services Center v. Hospital Building & Equipment Co.* (N.D. Ill. 1986), 638 F. Supp. 1492.) The court in *Moorman* noted that the demarcation usually depends on several factors, including the nature of the defect, the type of risk, and the manner in which the injury arose. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d at 82, citing *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, (3d Cir. 1981), 652 F.2d 1165; see also *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 441 N.E.2d 324.

The nature of the defect focuses on the product's condition before the actual injury occurred. The defect alleged here concerns the dangerous nature of the product. It is not alleged that the asbestos prod-

ucts failed to perform their function, but rather that they posed a grave risk of personal injury. (*City of Manchester v. National Gypsum Co.* (D.R.I. 1986), 637 F. Supp. 646 (nature of defect concerns replacement of product because of grave personal safety risk, not because of a defect in its performance; complaint in asbestos product liability case contains sufficient allegation of property damage so as to state tort claim and withstand motion to dismiss).) Tort law generally provides a sounder analytical basis for dealing with hazardous, as opposed to qualitative, defects. (*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165.) The legislative history of the Asbestos Abatement Act contains numerous descriptions of the nature of the risk as a health hazard, but not one reference to the quality or performance of the asbestos products. See, *e.g.*, 83d Ill. Gen. Assem., House Proceedings, June 22, 1984, at 129-30 (statements of Representative Satterwaite) ("The Bill as it now stands shows concern for school children throughout the State of Illinois in regard to the health and safety of those children").

The complaints in the present case allege that the school buildings contain asbestos products manufactured, mined, installed, or sold by defendants. In regard to the nature of the defect, they allege further:

"Asbestos in the school buildings has become, is becoming and/or will become separated from some or all of the asbestos products and also airborne; and has been, is and/or will be inhaled or absorbed by and remain in human beings and thereby cause serious disease and/or illness.

As a direct result of the presence of asbestos materials in plaintiff's educational facilities, students, school personnel and other persons have been or may in the future be exposed to asbestos and asbestos fibers."

Plaintiffs here never claimed they received poor asbestos products for their money, or that their contractual expectations were disappointed. Plaintiffs never claimed the asbestos products failed to perform satisfactorily as fireproofing or insulation material. The asbestos products may have adequately insulated, resisted fire, and muffled sound. The asbestos products might have been perfectly suitable for the purpose for which they were bought and installed within school buildings, but only if the children and teachers wore protective equipment to prevent the asbestos fibers from entering their bodies. See *Schooshanian v. Wagner* (Alaska 1983), 672 P.2d 455 (where plaintiffs did not allege they received poor insulation for their money; rather, they maintained that the incorporation of an allegedly toxic substance

in their building had physically altered the building to make it harmful to them).

■■ We conclude that the complaint contains allegations which adequately demonstrate that the first factor, the nature of the defect, is not a qualitative risk, but is a health hazard which is compensable in tort law. *Cf. Morrow v. L. A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 492 N.E.2d 181 (losses were solely economic as a result of construction defects); *Chicago Heights Venture v. Dynamit Nobel of America, Inc.* (7th Cir. 1986), 782 F.2d 723, 729 (losses solely economic where court held that the "gravamen of the complaint—simply stated—is that the roof did not work," which was "a matter of economic loss, the result of a qualitative defect"); *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.* (3d Cir. 1980), 626 F.2d 280 (applying Illinois law) (losses solely economic where roofing material performed unsatisfactorily when it failed to withstand high wind velocities); *Dixie-Portland Flour Mills, Inc. v. Nation Enterprises, Inc.* (N.D. Ill. 1985), 613 F. Supp. 985 (losses solely economic where flour contaminated with sand results in product unfit for intended use); *Redarowicz v. Ohlendorf,* 92 Ill. 2d 171, 441 N.E.2d 324 (losses economic where chimney, wall and patio are defective); *Moorman,* 91 Ill. 2d 69, 435 N.E.2d 443 (losses economic where crack in storage tank violates expectation interests); *Wheeling Trust & Savings Bank v. Tremco Inc.* (1987), 153 Ill. App. 3d 136, 505 N.E.2d 1045 (losses solely economic where materials defective and product did not work as well as plaintiff had expected); *Washington Courte Condominium Association-Four v. Washington-Gold Corp.* (1986), 150 Ill. App. 3d 681, 501 N.E.2d 1290 (losses economic where court finds gravamen of complaint is that the window and sliding doors did not work); *Unarco Industries, Inc. v. Frederick Manufacturing Co.* (1982), 109 Ill. App. 3d 189, 440 N.E.2d 360 (losses economic where faulty part is installed in radio towers).

We believe that the nature of the defect here indicates the loss is not solely economic, but instead extends to cover nonqualitative, hazardous products.

■■ The "type of risk" involved is the second element which the *Moorman* court listed as a factor indicating whether the complaint alleges only economic loss. Here, the risk consists of the danger to the health of the buildings' occupants. The interests which plaintiffs allege are entitled to protection concern safety and freedom from physical harm. The trial court found that plaintiffs failed to allege any personal injury or property damage, other than to the asbestos itself. The basis of much of the trial court's decision, and of defendants' con-

tentions before this court, rest upon this issue. We find, however, that the complaints adequately allege actual damage. The injuries alleged include:

> "The existence of asbestos materials in educational facilities has presented and continues to present a danger to the health and welfare of students, school personnel and other persons using plaintiff's education facilities."

> "[Fibers] have been *** inhaled or absorbed by school children, thereby causing disease or illness."

> "Asbestos inhaled by and remaining in human beings causes disease and/or illness."

> "Research indicates that physical effects resulting from exposure to asbestos materials may not manifest themselves for as long as forty years."

A review of the well-pleaded facts and reasonable inferences which may be drawn therefrom indicates that the incorporation of the asbestos physically altered the buildings in a manner which makes the building harmful to their occupants and that the physical damage to the property may be measured by the cost of repairing the buildings to make them safe. Plaintiffs rely upon the duty which society imposes on defendants to manufacture and sell a safe product. Plaintiffs are not disappointed purchasers; they are purchasers threatened by the product.

The injury, therefore, results from the installation of asbestos-containing products which contaminated the school buildings with asbestos fibers, which in turn endanger the health of the schools' occupants. The product threatens a substantial and unreasonable risk of harm by releasing toxic substances into the environment, which causes damage to the property owner. This clearly is not the type of risk that is normally allocated between the parties to a contract.

The fact that the buildings' occupants have not yet manifested symptoms of an asbestos-related illness does not mandate a finding of no actual injury. Such diseases may not develop for decades after the exposure, and it is enough that the product threatens an unreasonable risk of harm. (*City of Greenville v. W. R. Grace & Co.* (4th Cir. 1987), 827 F.2d 975.) In finding that the complaints allege an actual injury beyond an economic loss, we follow the rationale developed in the rapidly increasing line of school asbestos cases.

For example, in *City of Greenville v. W. R. Grace & Co.* (applying South Carolina law), the court affirmed a judgment entered on a jury verdict awarding $8.4 million to the plaintiff city, and against the defendant asbestos manufacturers, for damage to the city hall due to

the asbestos-containing products which had been installed in the building. The court rejected defendant's argument that there was insufficient evidence of serious risk because no occupant of the city hall had yet developed an asbestos-related disease. The court found that defendant should not be allowed to escape liability simply because there was not yet a documented personal injury. There was sufficient evidence from which a jury could find that the likelihood and potential seriousness of the injury which could result from the asbestos rendered the asbestos-containing fireproof material unreasonably dangerous and defective. The court found that, at most, defendant's evidence created a jury question as to the level of contamination and the degree of risk to which the building occupants were exposed.

In *City of Manchester v. National Gypsum Co.* (D.R.I. 1986), 637 F. Supp. 646 (applying New Hampshire law), the plaintiff-city sued manufacturers of asbestos products, seeking damages for removal and replacement of asbestos products from 16 schools and other public buildings. The court held that plaintiff sufficiently alleged physical harm to property. The complaint alleged that the presence of the asbestos products in the various buildings "posed an imminent and serious health danger to all those who normally came into contact with the buildings, *e.g.*, school children, teachers, administrative and maintenance personnel." (*Manchester*, 637 F. Supp. at 648.) The court found sufficient allegations "that the hazardous asbestos products have contaminated the \*\*\* buildings and the objects in them in a way which makes it harmful to the users." (*Manchester*, 637 F. Supp. at 651.) The court rejected defendants' argument that plaintiff suffered only economic losses. It accepted plaintiff's argument that the complaint "alleges physical harm to property because it claims the contamination of plaintiff's schools and public buildings with 'unreasonably dangerous' asbestos products, which made the buildings unsafe, thereby damaging the buildings and requiring the costly removal of the asbestos so as to restore the structures to their prior safe condition, and so as to discharge the City's duty to protect its citizens from the risk of unreasonable harm." *Manchester*, 637 F. Supp. at 649.

In *Town of Hooksett School District v. W. R. Grace & Co.* (D.N.H. 1984), 617 F. Supp. 126, the court denied defendant's motion to dismiss. The complaint alleged that defendant's asbestos product was released into the school's atmosphere thus contaminating the air, the carpeting, the curtains, other school furnishings, personnel and occupants. The court noted that, while asbestos was just one ingredient in the insulation, it managed to contaminate the remainder of the insulator, curtains, walls, carpets and other things. "Such contamination

constitutes a physical injury to Plaintiff's premises; where a defect in Defendant's product—*i.e.,* the asbestos—creates a cognizable safety hazard, the resulting injury to property is as actionable in strict liability and negligence as personal injury resulting from the defect would be \*\*\*." (*Hooksett,* 617 F. Supp. at 131, citing Prosser, *The Assault on the Citadel,* 69 Yale L.J. 1099, 1143 (1960); Restatement (Second) of Torts §402A (1965).) The court distinguished this damage from economic loss. "That the measure of the Plaintiff's damages is economic does not transform the nature of his injury into a strictly economic loss. The gist of Plaintiff's strict liability and negligence counts is not that the Plaintiff failed to receive the quality of product he expected, but that the Plaintiff has been exposed through a hazardous product, to an unreasonable risk of injury to his person or his property." *Hooksett,* 617 F. Supp. at 131, quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165.

In *Shooshanian v. Wagner* (Alaska 1983), 672 P.2d 455, plaintiffs alleged that urea formaldehyde foam insulation in their building had physically altered the building by releasing a toxic substance into the air. It had already affected their health and would continue to do so unless their living and working environment was physically altered. The court relied on *Seeley v. White Motor Co.* (1965), 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17, and its description of the nature of the responsibility which a manufacturer must undertake in distributing his products. "He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm." (*Shooshanian,* 672 P.2d at 463.) The *Shooshanian* court found it insignificant that the physical damage to the property was measured by the cost of repairing and replacing the walls to make them safe.

In *City of New York v. Keene Corp.* (1986), 132 Misc. 2d 745, 505 N.Y.S.2d 782, *aff'd* (1987), 513 N.Y.S.2d 1004, the city and its board of education sought indemnity or restitution costs incurred in a program for abatement of asbestos in public schools. The court denied defendant manufacturers' and installers' motion to dismiss for failure to state a cause of action. The court found that plaintiffs had made a sufficient showing of physical harm to their property so as to state a claim for negligence and strict liability.

The trial court in the present case premised its finding of insufficient allegations of damage on its belief that asbestos poses little risk in the schools:

> "[P]laintiffs have presented nothing whatsoever, nor has independent research disclosed anything, to establish the proposition

that low-level asbestos exposure in a non-occupational setting is a 'defect likely to cause harm' or that it 'poses any risk of physical harm.' It should not be assumed that simply because the asbestos threat is serious and real in one setting that it is equally serious and real in all settings. The risk of the asbestos worker cannot be extrapolated to those regularly or infrequently at the school site."

The trial court characterized the Illinois Asbestos Abatement Act (Ill. Rev. Stat. 1985, ch. 122, par. 1401 *et seq.*) as a corrective action based on "an abundance of caution" taken "before there is any documentation that these products cause injury by reason of proximity."

Initially we note that the legislative history of the Act contains numerous references to the documentation that the asbestos-containing products caused injuries in the school. For example, one legislator stated:

"This bill arose out of a study *** regarding the dangers of asbestos in buildings. *** [W]e held a hearing that I think lasted in excess of four hours and had fifteen some witnesses and everyone there testified as to the health hazard of friable asbestos. This bill is an outgrowth of that hearing and the wealth of material that we have received as a result thereof." 83d Ill. Gen. Assem., Senate Proceedings, May 22, 1984, at 106-07 (statements of Senator Berman).

Another legislator stated:

"To say that asbestos is a health hazard is an understatement. I think we're all familiar with the horrendous consequences that asbestos can have in the workplace, and it is even more sensitive when we're talking about children being exposed to asbestos. We have seen instances where children being exposed to asbestos in the schools have been incapacitated for life. In fact, we've had documentation where at least one child has actually died from attending a public school in the south that had asbestos [in it]." 83d Ill. Gen. Assem. House Proceedings, June 25, 1984, at 94 (statements of Representative Levin).

Furthermore, ascertaining the danger point is critical to proof. (*In re School Asbestos Litigation* (3d Cir. 1986), 789 F.2d 996, 1009-10, *cert. denied* (1986), 479 U.S. 852, 93 L. Ed. 2d 117, 107 S. Ct. 182.) The issue of whether or not a lower concentration of exposure creates a substantial danger is an issue for the jury. The issue, therefore, does not affect our holding here.

The trial court here also concluded that "the nature and kind of damages alleged by the plaintiffs *** is precisely the kind of eco-

nomic loss rejected by Moorman." Such reasoning ignores the often-cited principle in this area of law that the items for which damages are sought, *e.g.*, repair and replacement costs, are not determinative. (*Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443, citing *Pennsylvania Glass Sand Corp.*, 652 F.2d 1165; accord *Dixie-Portland Flour Mills, Inc. v. National Enterprises, Inc.* (N.D. Ill. 1985), 613 F. Supp. 985; *Vaughn v. General Motors Corp.* (1983), 118 Ill. App. 3d 201, 454 N.E.2d 740, *aff'd* (1984), 102 Ill. 2d 431, 466 N.E.2d 195.) The nature of the damages is not the sole factor used in distinguishing a tort from a contract claim. (*Swaw v. Ortell* (1984), 137 Ill. App. 3d 60, 484 N.E.2d 780.) The court must look deeper, to the policies underlying the *Moorman* rule. *Chicago Heights Venture v. Dynamit Nobel of America, Inc.* (7th Cir. 1986), 782 F.2d 723; *Dixie-Portland Flour Mills, Inc. v. Nation Enterprises, Inc.* (N.D. Ill. 1985), 613 F. Supp. 985.

In *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, cited in *Moorman*, the court noted that the items most frequently sought as damages in this type of case are the costs of repair or replacement. (Accord *Schooshanian v. Wagner* (Alaska 1983), 672 P.2d 455.) This differs considerably, however, from the type of economic loss traditionally encompassed within warranty law. "Economic loss" is not the equivalent of any monetary damages which plaintiffs seek. Every prayer for relief seeking the cost of repairing a damaged product does not necessarily entail the type of economic loss traditionally encompassed within warranty law. (*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165; see also *City of Manchester v. National Gypsum Co.* (D.R.I. 1986), 637 F. Supp. 646 (primary focus should be on unreasonableness of danger risk, and not on measure of damages; physical damage caused by asbestos to school buildings may be measured by cost of repairing and replacing asbestos products).) Thus, we are compelled to reject the trial court's reasoning on this point.

■ The third factor which the *Moorman* court found might distinguish economic losses from tort damages is the manner in which the injury arose.

In finding only economic losses here, the trial court placed great emphasis on the fact that no "sudden and calamitous" event occurred. However, there is nothing magical about that phrase. (*Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d at 83-84, citing *Cloud v. Kit Manufacturing Co.* (Alaska 1977), 563 P.2d 248.) While the "sudden and dangerous" occurrence fact has received much attention, it is not necessarily controlling in every case. Some tortious interferences happen more slowly. Not every tort is the result of a cataclysmic event.

See *Dixie-Portland Flour Mills, Inc. v. Nation Enterprises, Inc.* (N.D. Ill. 1985), 613 F. Supp. 985.

The critical element of a strict products liability claim, therefore, is not whether a sudden and calamitous event occurred. Such a loss is not an all-inclusive test for strict liability loss. (*Shooshanian v. Wagner* (Alaska 1983), 672 P.2d 455.) Instead, the critical inquiry is whether the product is dangerously defective and whether the defect caused the property damage alleged. *Cloud v. Kit Manufacturing Co.* (Alaska 1977), 563 P.2d 248; *Shooshanian*, 672 P.2d 455.

In *Moorman*, the court found that a crack which developed in a storage tank was not the type of sudden and dangerous occurrence best served by the policy of tort law that the manufacturer should bear the risk of hazardous products. (*Moorman*, 91 Ill. 2d at 83, quoting Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966).) The court never indicated, however, that tort law was ill-suited to address any hazardous products which caused injuries in a dangerous, but not sudden, manner. See *Bagel v. American Honda Motor Co.* (1985), 132 Ill. App. 3d 82, 477 N.E.2d 54 (where defect in cam chain in engine developed over period of time, and incident did not occur in a dangerous manner which posed an unreasonable risk of injury to plaintiff or his property). See also *United Air Lines, Inc. v. CEI Industries of Illinois, Inc.* (1986), 148 Ill. App. 3d 332, 499 N.E.2d 558 (court distinguishes the suddenness of the occurrence which results in property damage from the sudden time within which the defect develops or manifests itself).

In *Shooshanian v. Wagner*, the court permitted a tort claim to stand, notwithstanding the absence of a sudden and calamitous event where urea formaldehyde foam insulation gave off noxious fumes causing allergic reactions and a health hazard, which drove away their customers. The court emphasized that the defective product had physically altered the building such that it was harmful to its occupants. *Shooshanian*, 672 P.2d 455.

■■ As we have discussed, we find the type of hazardous product claim presented here to be ideally suited for resolution within the tort system. The trial court viewed plaintiffs' arguments as an attempt to have the court see the products as inherently dangerous. The trial court reasoned however, that "plaintiffs' own conduct makes that conclusion suspect. The plaintiffs themselves have not seen fit to remove the products from their school for over 20 years ***." The fact that a property owner may have chosen "to live with it" is relevant only to assumption of risk and comparative fault, neither of which is at issue on appeal here. *Vaughn v. General Motors Corp.*, 102 Ill. 2d at 437.

■■ The trial court also found that no strict liability suit could be alleged because no "product" was involved. Generally, buildings themselves are not products for the purpose of strict liability in tort. (*Trent v. Brasch Manufacturing Co.* (1985), 132 Ill. App. 3d 586, 477 N.E.2d 1312.) However, a part of a structure may be a product. (*Trent v. Brasch Manufacturing Co.* 132 Ill. App. 3d 586, 477 N.E.2d 1312.) Moreover, an item may be considered a product if it would effectuate the policy basis for imposing strict liability in tort. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210.) Moreover, whether an item attached to a building can be termed a "product" is a factual inquiry which is not appropriate in a motion to dismiss. *Trent v. Brasch Manufacturing Co.*, 132 Ill. App. 3d 586, 477 N.E.2d 312.

For these reasons, we hold that plaintiffs have sufficiently alleged the requisite physical damage for strict liability in tort and for negligence. The complaints allege sufficient facts to withstand the motion to dismiss, and the trial court erred in dismissing these causes of action on the basis that they alleged solely economic losses.

■■ Plaintiffs next allege a right of restitution. Section 115 of the Restatement of Restitution (Restatement of Restitution § 115 (1937)) recites the emergency assistance doctrine, under which restitution may be had where the things supplied were immediately necessary for health or similar concerns and plaintiffs undertook defendants' duty to correct. The trial court erred in ignoring section 115, and in relying instead on section 106 of the Restatement, which states that a party is not entitled to contribution where it was under a duty to make the improvement. See *Wyandotte Transportation Co. v. United States* (1967), 389 U.S. 191, 19 L. Ed. 2d 407, 88 S. Ct. 379 (government entitled to restitution for cleaning up chemical spill in Mississippi River because government should not be penalized for the correct performance of its duty).

Plaintiffs here sufficiently alleged the emergent nature of the removal and the hazardous nature of the asbestos products. Plaintiffs adequately stated a cause of action in restitution, and the trial court erred in dismissing that count. See *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 400 N.E.2d 614.

■■ Plaintiffs also allege a right of action under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). That act confers standing on school districts as "persons" and "corporations." (Ill. Rev. Stat. 1985, ch. 121½, par. 261(c).) Moreover, school districts as corporations have the legal capacity to sue and be sued. (Ill. Const. 1970, art. VII, §8; Ill. Rev. Stat.

1985, ch. 122, par. 10—2.) The trial court erred in holding that plaintiffs had no standing. See also Ill. Rev. Stat. 1985, ch. 1, par. 1006 ("persons" includes bodies politic and corporate); *Board of Education v. County of Woodford* (1974), 19 Ill. App. 3d 1078, 1081, 312 N.E.2d 724 (court upheld public corporation's standing).

■■■ Plaintiffs also charged defendant with breach of warranty. Defendants rely upon *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 503 N.E.2d 760, which held that privity of contract is a prerequisite to recovery in breach of warranty actions alleging solely economic loss. The general rule in Illinois, however, has not changed. Privity of contract is not necessary in warranty actions where plaintiffs allege physical injury. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324; *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550.) As we have discussed, plaintiffs have adequately alleged actual physical injury. The trial court erred in dismissing the warranty claims on privity grounds. Defendants also argue that plaintiffs did not issue proper notice to defendants of the breach of warranty. (Ill. Rev. Stat. 1985, ch. 16, par. 2—607(3)(a).) Whether notice was adequate is a question of fact which should not be determined at this stage. *Goldstein v. G. D. Searle & Co.* (1978), 62 Ill. App. 3d 344, 378 N.E.2d 1083.

■■■ Plaintiffs further charged defendants with fraudulent misrepresentation. The trial court held that plaintiffs failed to allege any details, and merely asserted that defendants knew of the hazard and failed to tell plaintiffs. Conspiracies by their very nature do not allow the allegation of specific details of defendants' acts. Thus, the exact role of each defendant cannot always be spelled out in the complaint. *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463.

Plaintiffs here stated that defendants represented that the products were safe when they knew or ought to have known the untruth of this representation. Defendants obscured data on the relationship between the asbestos exposure and disease since the mid-1930's; conspired to deprive plaintiffs of this data; induced plaintiffs to purchase and use the products; deprived plaintiffs of the information necessary to make a knowledgeable choice about purchasing defendants' products; and were members of an industry association that discouraged research and publication concerning the relationship between the asbestos and cancer starting in the 1950's. We note that fraud may include breach of duty by silence. *People ex rel. Chicago Bar Association v. Gilmore* (1931), 345 Ill. 28, 177 N.E. 710; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.

The trial court found that the allegations that the industry knew was not specific enough, as it lacked a date. The allegations regarding defendants' knowledge of the dangers of asbestos in the mid-1930's sufficiently indicate the approximate date when representations were made. The trial court also objected to the absence of an allegation regarding intent to deceive. The complaints sufficiently allege, however, that defendants intended to deprive the public and plaintiffs of the medical and scientific data.

The trial court further held that there was no allegation of any damage which is proximately caused by the purported fraudulent misrepresentation, and that the damages alleged were too remote and failed to cite any loss to plaintiffs by which to measure damages. We have already found that actual damages were alleged and that the measurement of damages by repair and replacement costs is proper.

We conclude that the trial court erred in dismissing the cause of action for fraudulent misrepresentation.

Plaintiffs also charge negligent misrepresentation. The trial court found that plaintiffs failed to allege that defendants are in the business of supplying information. The tort of negligent misrepresentation does not require that defendants be in the business of supplying information. (See *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) Moreover, the allegations of actual damages, as we have discussed, are sufficient. (See *Moorman*, 91 Ill. 2d 69, 435 N.E.2d 443; *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 440 N.E.2d 282.) The court erred in dismissing the claim for negligent misrepresentation.

Next, the trial court found that plaintiffs were not immune from a statute of limitations because they are not protecting "public rights." The court held that the six counts with statute of limitation ramifications were barred as untimely.

A statute of limitations may not be asserted as a defense against a government unit in actions asserting public rights. (*City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 847.) Public rights are those in which the public has an interest in common with the municipality. (See *City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874.) Here, the interest in the health and education of all school children is a public interest. Plaintiffs are charged with maintaining safe buildings for children, employees and the public. Tax expenditures for the purposes of protecting the public health and safety are all indications of the public interest in-

volved here. (See *Shelbyville*, 96 Ill. 2d 457, 451 N.E.2d 874.) This case is clearly within the category of public rights, and the court erred in barring the actions under the statute of limitations.

We note that public interest is also expressed in the Asbestos Abatement Act (Ill. Rev. Stat. 1985, ch. 122, par. 1402(d)): "[I]n view of the fact that the State of Illinois has compulsory attendance laws for children of school age and these children must be educated in a safe and healthy environment, the presence and condition of asbestos in the schools is of special concern to the General Assembly."

■■ Plaintiffs also allege a statutory duty of abatement which confers upon them a private right of action. The trial court found that the Asbestos Abatement Act (Ill. Rev. Stat. 1985, ch. 122, par. 1401 *et seq.*) does not impose a duty on defendants and does not confer a private right on the school districts. Under *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849, plaintiffs must be members of the class for whose benefit the statute was enacted. Here, it is clear that the nature of the risk is the health hazard which is suffered by the buildings' occupants, not by the entities acting as plaintiffs here. Thus, implying a private right would not be consistent with the statute's underlying purpose, *i.e.*, to protect the health of students. Plaintiffs err in focusing on what they term the statute's "funding purpose." The amendment which recognizes funding shall consist in part from "proceeds from litigation against manufacturers, distributors and contractors of asbestos products" does not alter our holding. (Ill. Rev. Stat. 1985, ch. 122, par. 1409.) Thus, regardless of the duty placed upon plaintiffs, the trial court correctly found there is no basis to imply a private cause of action under the Act.

■■ We also find that the trial court properly dismissed the concert of action count. Plaintiffs failed to adequately plead the elements of this theory. See *Schmidt v. Archer Iron Works, Inc.* (1970), 44 Ill. 2d 401, 256 N.E.2d 6, *cert. denied* (1970), 398 U.S. 959, 26 L. Ed. 2d 544, 90 S. Ct. 2173.

For all the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as to the dismissal of the concert of action count and the holding that no private right of action exists under the Asbestos Abatement Act. The judgment is reversed as to the dismissal of all other counts, and the cause is remanded for further proceedings consistent with the holdings contained herein.

Affirmed in part; reversed in part and remanded.

WHITE, P.J., and FREEMAN, J., concur.