CLOVERHILL PASTRY-VEND CORPORATION, Plaintiff-Appellant, v.
CONTINENTAL CARBONICS PRODUCTS, INC., Defendant-Appellee.

First District (5th Division)   No. 1—90—2187

Opinion filed May 17, 1991.

Law Offices of Alan I. Boyer, of Skokie (William S. Piper and Joan C. Clements, of counsel), for appellant.

Kathryn L. Krueger, of Leahy, Eisenberg & Fraenkel, Ltd., of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Cloverhill Pastry-Vend Corporation (Cloverhill) appeals from the dismissal of one count of a five-count complaint filed against Continental Carbonics Products, Inc. (Continental). Despite the fact that the case still pends in the lower court on the remaining counts, this appeal is proper because the trial court ordered that the dismissal was final and appealable pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

The only issue before this court on appeal is whether the trial court properly dismissed plaintiff's count V. The trial court ruled that, as a tort claim seeking purely economic damages, it was prohibited by the so-called *"Moorman* Doctrine." (See *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.) The facts of the case are not materially in dispute.

In April 1984 Continental sold dry ice and a dry ice crusher to Cloverhill[1]. Although the contract did not reflect the fact, Cloverhill contends that Continental was aware that the crushed dry ice was to be used by Cloverhill in the preparation of its bakery dough to accelerate the production process.

Cloverhill began using the dry ice crusher and dry ice purchased from Continental until May 4, 1984, when it was discovered, after having received complaints from customers concerning its baked goods, that the machine was causing small chips or flakes of metal to

---

[1]The contract involved in this case indicates that defendant sold the dry ice crusher to Cloverhill Bakery, Inc., which is a different corporation from plaintiff. In count I of plaintiff's complaint, plaintiff seeks reformation of the contract to reflect the fact that the true purchaser of the ice crusher was Cloverhill Pastry-Vend Corporation (plaintiff). In count I plaintiff contends that Cloverhill Pastry-Vend Corporation was the entity in the business of preparing, baking and selling bakery products, while Cloverhill Bakery, Inc., was involved exclusively in the business of developing the sales and marketing of products manufactured by Cloverhill Pastry-Vend Corp. (plaintiff). Plaintiff further contends that it was merely an oversight and mistake that the contract did not correctly reflect the true purchaser when it was reduced to writing.

For the purposes of this appeal, we shall assume, as plaintiff alleges, that it was the purchaser of the dry ice crusher.

be dispersed through the dough. Defendant was immediately notified, and it reimbursed Cloverhill the amount of $112,663.93 for the cost of the contaminated baked goods, which were recalled and destroyed.

On November 28, 1984, Cloverhill filed a five-count complaint against Continental, which was amended on August 25, 1989. Continental subsequently moved to dismiss count V of the amended complaint, which alleged that Continental was negligent in its manufacture of the dry ice crusher and sought recovery for lost business which resulted from the loss of customers and accounts stemming from the contaminated baked goods. Cloverhill amended count V again on November 27, 1989, to include as damages the loss of its reputation and goodwill, but the trial court granted Continental's motion to dismiss, holding that the count sought recovery for purely economic damages which were not recoverable in a tort action pursuant to *Moorman*.

Cloverhill disputes the trial court's strict application of *Moorman* to this case and relies on the more recent Illinois Supreme Court case, *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580, as support for its contention that economic losses are recoverable in a case of this nature, although personal injury did not occur and is not alleged. We disagree with plaintiff's interpretation of the case law cited and we affirm the trial court's judgment.

 In *Moorman* the plaintiff sought recovery for the cost of repairs and the consequential damages resulting from the loss of use of a grain storage tank. The court rejected plaintiff's claim that these elements of damage were noneconomic and concluded that qualitative defects were best handled by contract rather than tort law.

 In *Board of Education*, the case primarily relied upon by plaintiff in this appeal, the court did not overturn *Moorman*, but rather distinguished and explained *Moorman*, when it found that a claim for damage to buildings caused by the presence of friable asbestos stated a claim in tort. Acknowledging that it might seem "somewhat artificial" to fit a claim for asbestos damage into the traditional framework for tort actions because of the unique nature of the "defect" and "damage" caused by asbestos, the court nonetheless found that a claim in strict liability and negligence had been stated. This, however, was because the court found that the product itself was inherently and unreasonably dangerous so that its mere presence in the building caused damage to the building and its occupants.

However, the court specifically stated that its decision was not to be construed as an "invitation to bring economic loss contract actions within the sphere of tort law." (131 Ill. 2d at 445.) Moreover, the

court in *Board of Education* affirmed *Moorman* and noted that mere allegations of "risk of injury" or the unreasonably dangerous nature of the product were insufficient in tort where no physical injury to property (other than the product itself) and no personal injury had been sustained or alleged. 131 Ill. 2d at 442, 444.

While it is true that the facts of the present case do not fit neatly into either of these previously decided cases, we do not believe that they support an expansion or deviation from the tenets of the *Moorman* doctrine.

■■ ■ Initially, we note that Cloverhill did not allege in its complaint that the dry ice crusher or dry ice was inherently or unreasonably dangerous. Instead, this is plaintiff's claim on appeal in an attempt to bring the facts of the present case within the parameters of the case in *Board of Education*. We note, too, that Cloverhill has not indicated how Continental's products were inherently dangerous or caused its baked goods to become inherently dangerous. Plaintiff relies on the fact that the baked goods were contaminated and had to be recalled under Illinois law. However, we do not agree that the fact that the baked goods were contaminated automatically requires a finding that the baked goods were toxic or that they presented a threat to human life.

We are not unmindful of Justice Simon's comments in his specially concurring opinion in *Moorman*, wherein he states:

> "Conversely, I believe there should be recovery for lost profits where a plaintiff restaurant buys and serves the defendant's unfit packaged food, so that a patron, though uninjured, jumps up and denounces the restaurant, wrecking its reputation."
> *Moorman*, 91 Ill. 2d at 95 (Simon, J., specially concurring).

Although this statement does provide plaintiff with some support for its claim, we must keep in mind that Justice Simon's comments are merely *dicta* and we have found no Illinois cases that have followed its proposed direction. In fact, a Federal case interpreting Illinois law, including *Moorman* and its progeny, refused a plaintiff's claim for lost business and lost profits under somewhat similar circumstances. In *Dixie-Portland Flour Mills, Inc. v. Nation Enterprises, Inc.* (N.D. Ill. 1985), 613 F. Supp. 985, Nation Enterprises, which was in the business of manufacturing pizzas, discovered that the flour it purchased from Dixie-Portland and used to prepare its pizzas was contaminated with sand. Nation Enterprises refused to pay for the flour and, in addition, sued, both in tort and in contract for the damage to its other pizza ingredients and materials as well as for their lost business and profits. The court dismissed the tort claims,

finding that a qualitative defect had been alleged and that recovery in tort was precluded by *Moorman* and its progeny.

We concur with the Federal court's interpretation of *Moorman* and the subsequent cases that have followed its holding. We believe that plaintiff here, as the plaintiff in *Dixie-Portland*, has only succeeded in demonstrating that defendant's products were not fit for the particular use contemplated.

Additionally, because plaintiff claims that defendant represented that its dry ice crusher could crush dry ice to be used in the baking process does not bring this case under a recognized exception to *Moorman*. Plaintiff does not allege that defendant intentionally misrepresented its equipment falsely and, although it may have been a negligent misrepresentation, because defendant was not in the business of supplying information, solely economic loss stemming from this negligent misrepresentation is not recoverable. See *Collins v. Reynard* (1990), 195 Ill. App. 3d 1067, 1070, 553 N.E.2d 69.

We must keep in mind that plaintiff is not seeking to recover for personal injury or for injury to property. In fact, Continental has already reimbursed plaintiff for whatever injury plaintiff sustained to its "property," *i.e.*, its bakery goods which were recalled and destroyed. Rather, plaintiff is seeking to recover for the intangible and consequential damages of lost profits, lost business, and damage to reputation and goodwill. We believe that, in this way, plaintiff is seeking to recover purely economic damages. For this reason, we affirm the decision of the trial court.

The order entered by the the circuit court of Cook County, dismissing plaintiff's count V, is hereby affirmed.

Affirmed.

LORENZ, P.J., and GORDON, J., concur.