LONDON TRENT, Plaintiff-Appellant, v. BRASCH MANUFACTURING COMPANY, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 83—2269

Opinion filed April 9, 1985.

Arnold & Kadjan, of Chicago (Mark H. Mennes and Gregory R. Sun, of counsel), for appellant.

Jerome H. Torshen, Ltd., and Garretson & Santora, both of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellee Thermodynamics, Inc.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll and Lloyd E. Williams, Jr., of counsel), for appellee Brasch Manufacturing Company.

Haskell & Perrin, of Chicago (Kevin W. Doherty, of counsel), for appellee Gould, Inc.

JUSTICE PERLIN delivered the opinion of the court:

London Trent, plaintiff, appeals from the dismissal with prejudice of count I of his amended complaint for failure to state a cause of action in strict liability in tort. Plaintiff filed a two-count amended complaint alleging that he was injured while "checking the thermostat" of the heating, ventilating and air-conditioning system (HVAC) in the Dearborn Park Plaza Building in Chicago. Plaintiff sought damages from defendants along the distributive chain of the HVAC who had manufactured, designed, distributed, sold, installed and serviced the "electric duct heater," "air handling unit," "control panel" and "fuses" of the HVAC.

Count I of the amended complaint was based on strict liability in tort and alleged that "said electrical devices" were "defective, unsafe and unreasonably dangerous for their foreseeable use," as a proximate result of which the electric duct heater and control panel "exploded," injuring plaintiff. Count II of the amended complaint, alleging similar facts, sounded in negligence.

Certain defendants filed motions to dismiss count I of the amended complaint contending that the instrumentalities of which plaintiff complained were not "products" within the ambit of strict liability in tort because they were "component and indivisible parts [of]" a building. The trial court agreed, and count I was accordingly dismissed with prejudice as to all defendants. At the close of the hearing on plaintiff's motion to reconsider, the trial court denied plaintiff's motion stating that "once that object, ***, is attached to real estate;

namely, a building, it is no longer a product for purposes of strict tort liability." Plaintiff appeals contending that the trial court erred in holding that because the HVAC was attached to a building it could not be labelled a "product" for purposes of strict liability in tort.

# I

The primary issue before this court is whether the HVAC, having been installed in a building, may be deemed a "product" for purposes of strict liability in tort.

A brief review of the doctrine of strict products liability may be in order. In *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 62, 377 P.2d 897, 900, 27 Cal. Rptr. 697, 700, the case regarded as "the progenitor" (*Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923) of the doctrine, the California Supreme Court held that a "manufacturer is strictly liable in tort when an article he places on the market, knowing it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." That court stated that the purpose of strict liability is "to insure that the cost of injuries resulting from defective products is borne by the manufacturers who put such products on the market rather than by the injured persons who are powerless to protect themselves." *Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 63, 377 P.2d 897, 901, 27 Cal. Rptr. 697, 701.

In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, the Illinois Supreme Court adopted the doctrine of strict liability in tort as set out in section 402A of the Restatement (Second) of Torts. That section provides:

> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Restatement (Second) of Torts sec. 402A (1965).)

In *Suvada*, the court stated that liability for a defective product extended to a manufacturer, one who holds himself out to be a manufacturer, a seller, a contractor, a supplier, the assembler of parts and the manufacturer of a component part. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 617.

In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 74, 435 N.E.2d 443, our supreme court noted with regard to the origins of the doctrine of strict liability:

"The tort law of products liability stems from the contract cause of action for breach of warranty. In *McPherson v. Buick Motor Co.* (1916), 217 N.Y. 382, 111 N.E. 1050, liability in negligence was imposed upon a manufacturer to an ultimate consumer without privity of contract. Subsequently, courts began to hold manufacturers liable for personal injuries without negligence; the theory generally utilized to reach the manufacturers was based on the law of sales warranty. [Citations.] However, recognition of the difficulties facing consumers with respect to items such as notice and privity led most courts to abandon the privity requirement in implied-warranty actions [citations] and to ultimately abandon the fiction of warranty in favor of strict liability in tort."

Although the Illinois Supreme Court has not defined specifically a "product" for purposes of strict liability in tort, our appellate court has repeatedly stated that "the social policy justifications" underlying the adoption of strict liability, rather than a dictionary definition of the term "product," should be determinative of that issue. Strict liability did not evolve simply because something was a "product"; "[t]he policy reasons brought it into being and continued to expand it. It is those reasons then that should determine what is a product ***." (*Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 384; *Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677, 406 N.E.2d 88; *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 368 N.E.2d 803.) "Thus, the social policy underlying the doctrine [of strict liability] has become the definition of 'product.' " *Symposium on Products Liability: What is or is not a Product Within the Meaning of Section 402A*, 57 Marq. L. Rev. 623, 626-27 (1974).

A general statement of the social policy underlying strict liability appears in comment *c* of section 402A, which states:

"On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who

may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." Restatement (Second) of Torts sec. 402A, Explanatory Notes, comment *c*, at 349-50 (1965).

This court has stated that the policy reasons to be considered in determining whether something constitutes a "product" for purposes of strict liability are: "(1) the public interest in human life and health; (2) the invitations and solicitations of the manufacturer to purchase the product; (3) the justice of imposing the loss on the manufacturer who created the risk and reaped the profit; and (4) the superior ability of the commercial enterprise to distribute the risk of injury proximately caused by the defective condition of its product by passing the loss on to the public as a cost of doing business." *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 527, 455 N.E.2d 142; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612; *Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677, 406 N.E.2d 88; *Immergluck v. Ridgeview House* (1977), 53 Ill. App. 3d 472.

In *Immergluck*, this court noted as a further policy consideration " 'the disparity in position and bargaining power which forces the consumer to depend entirely on the manufacturer and the difficulty of requiring the injured party in consumer products cases to trace back along the channel of trade to the source *** of the defect in order to prove negligence ***.' " (*Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 474.) Whether the "product" is in the stream of commerce is also relevant. *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472; see *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 455 N.E.2d 142; *Moorman Manufacturing Co. v. National Tank Co.* (1980), 92 Ill. App. 3d 136, 414 N.E.2d 1302, *rev'd in part, aff'd in part* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.

Based on section 402A of the Restatement and these policy considerations, this court has consistently held that "buildings" are not "products" for purposes of strict liability in tort. *Lowrie* (open-air parking garage and parking spaces therein not products); *Immergluck*

(sheltered-care facility not a product); *Heller* (condominium not a product).

In *Heller*, where plaintiff had alleged property damage as a result of defective construction of a condominium, the court noted that the policy considerations underlying strict liability in tort did not support a finding that a condominium unit was a "product," since:

> "A finding that a condominium is not a product would not leave plaintiff without a remedy for the alleged defects. No difficulty of access to a remote manufacturer or supplier exists here. Finally, inasmuch as plaintiff has not alleged any personal injury or threat of harm arising from the alleged defects, imposition of strict liability is not required under these circumstances to advance the public interest in human life and health." *Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677, 680.

The *Heller* court noted that jurisdictions which have applied strict liability to a building have done so in the context of "mass-produced" homes (see, *e.g.*, *Schipper v. Levitt & Sons* (1965), 44 N.J. 70, 207 A.2d 314; *Kriegler v. Eichler Homes, Inc.* (1969), 269 Cal. App. 2d 224, 74 Cal. Rptr. 749), and/or have focused on a defective product within the home, not the home itself. (*Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677.) Buildings are not typically mass-produced, but rather are the result of an "ongoing contractual relationship between the purchaser and builder." Thus the policy considerations which brought products liability into being "do not exist in the context of building construction." Comment, *Strict Liability & the Building Industry*, 33 Emory L.J. 175, 209 (1984).

It does not necessarily follow, however, from the premise that "buildings" are not "products" that an item, such as the HVAC in the instant case, which has become attached to a building cannot be found to be a "product" for purposes of strict liability in tort. In *Moorman*, this court found a grain storage tank which had been installed in a processing plant to be a "product," stating:

> "The question of whether something is a product is determined by looking to the policies supporting the strict liability in tort doctrine. We have discussed these policies above—the manufacturer's special responsibility to buyers, the need to protect helpless buyers, and the cost-spreading capacity of the manufacturer. The fact that this plaintiff can proceed under other theories does not weaken the policies supporting the application of the doctrine of strict liability in tort here. The tank in question was placed into the stream of commerce by the defendants, who presumably reaped a benefit from the sale. *The mere*

*fact that the tank has apparently become a part of the real estate is not, of itself, sufficient reason to say that it is not a product.*" (Emphasis added.) *Moorman Manufacturing Co. v. National Tank Co.* (1980), 92 Ill. App. 3d 136, 146.

Defendants here rely upon the case of *Walker v. Shell Chemical, Inc.* (1981), 101 Ill. App. 3d 880, 428 N.E.2d 943, for the proposition that an HVAC which has been installed into a multi-unit dwelling is not a "product." In *Walker*, a welder brought a cause of action against the designers and manufacturers of a "fabricated guardrail" for injuries sustained on a construction site when the guardrail broke. Acknowledging the previous Illinois cases discussed herein, the court stated that "if the guardrail involved in the instant case was actually a component and indivisible part of the entire building structure, it may not be considered as a product." (101 Ill. App. 3d 880, 883.) Defendant maintains that the HVAC was a "component and indivisible part of the entire building structure" and therefore not a product under *Walker*.

This court interpreted *Walker* in *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520. Plaintiff sought damages for personal injuries suffered when her hand was caught in a conveyor system installed in a post office building. On appeal, this court reversed the trial court's finding that a conveyor was not a "product," stating:

> "Our holding in *Walker should not be read so broadly as to incorporate the law of fixtures into products liability law. What items are to be deemed products must be based on the underlying policies for strict liability in tort* \*\*\*. *Walker* imposes a limitation on the application of strict liability only with regard to those items which are an indivisible part of the building structure itself, such as the bricks, supporting beams and railings. Such items are significantly different than a conveyor system housed in a building since they do not have an indivisible identity prior to installation but are rather indivisible component parts of the building itself." (Emphasis added.) 118 Ill. App. 3d 520, 529.

■ Our review of Illinois case law and the policy considerations underlying strict liability persuade us that the question of whether an article is "attached" to real estate is not the ultimate test; rather an analysis in terms of the policy considerations supporting the imposition of strict liability must be employed to determine whether this HVAC constitutes a "product." *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612; *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill.

App. 3d 520; *Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677; *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472; *Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376.

■ Although, due to the incomplete factual record before this court, we do not reach the issue of whether the HVAC in this instance is in fact a product for purposes of strict liability, we do hold that the trial court erred in dismissing Count I of plaintiff's amended complaint solely on the basis that because the HVAC was "attached" to real estate it was, as a matter of law, not a "product."

## II

■ For the first time on appeal, defendants contend that even assuming the HVAC may be deemed to be a "product" for purposes of strict liability in tort, the dismissal with prejudice of count I of plaintiff's amended complaint should be affirmed because the factual allegations of the complaint are allegedly inadequate to state a cause of action in strict liability. Defendants maintain that plaintiff failed to allege the location of the explosion within the building, what plaintiff was doing and where he was when the explosion occurred, the location of the thermostat or the location of the electric duct heater within the building.

At the time of defendants' motion to dismiss in the trial court, the parties and the court focused narrowly on the issue of whether the HVAC was "product." Other short-comings in the complaint, now alleged by defendants, were not "specifically" pointed out as is required by the Code of Civil Procedure. Ill. Rev. Stat. 1981, ch. 110, par. 2—615(a).

Dismissal of an action due to pleading deficiencies is a "drastic punishment" when imposed upon a litigant. (*McCarthy v. Allstate Insurance Co.* (1979), 76 Ill. App. 3d 320, 324, 395 N.E.2d 139.) The Code is intended to allow amendments to pleadings so as to allow cases to be decided on their merits rather than on procedural technicalities. (*Anderson v. Rick's Restaurant & Cocktail Lounge* (1977), 45 Ill. App. 3d 992, 360 N.E.2d 465.) Although a reviewing court may affirm a judgment on any basis appearing in the record (*Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527, 391 N.E.2d 177), "justice would not be served by affirming a dismissal of a judgment against a party on the basis of a pleading defect which could be remedied by amendment." *Village of Pawnee v. Knostman* (1983), 115 Ill. App. 3d 842, 854-55, 450 N.E.2d 1272.

We believe it would be unjust, therefore, here to affirm the trial court's dismissal of count I of plaintiff's amended complaint on the

basis of "pleading deficiencies" alleged by defendants for the first time on review.

For the reasons stated herein, the order of the trial court dismissing count I of plaintiff's amended complaint is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

STAMOS, P.J., and BILANDIC, J., concur.