William M. **BASTIAN, Jr.** and Debra K. Bastian, Plaintiffs,

v.

**WAUSAU HOMES INCORPORATED and TPI Corporation, Defendants.**

**No. 84 C 10971.**

United States District Court, N.D. Illinois, E.D.

Sept. 24, 1985.

Kevin Caraher, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for plaintiffs.

Manuel Sanchez, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs William M. Bastian, Jr. and Debra K. Bastian have filed a six-count diversity action against defendants Wausau Homes Incorporated (Wausau) and TPI Corporation (TPI) seeking damages for the loss of plaintiffs' residence and its contents by fire on December 30, 1982. Counts I through IV of the complaint are directed

against Wausau, while counts V and VI are directed against TPI. Wausau's motion to dismiss count I, a strict liability in tort claim, and count II, a breach of an express contract warranty, pursuant to Rule 12 of the Federal Rules of Civil Procedure for failure to state a cause of action, is now before this court.

## I.

The purpose of a motion under Fed.R. Civ.P. 12(b)(6) is to determine whether the claim has been adequately stated in the complaint. The complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Plaintiffs' complaint alleges that they entered into a contract to purchase a home from Wausau on June 14, 1979 and that the home was constructed by Wausau in 1979 at Route 1, Creek Road, Sandwich, Illinois. In count I of the complaint plaintiffs further allege that the home, which was designed, packaged, constructed and sold to them by Wausau, was in an unreasonably dangerous condition at the time it left Wausau's control in that it contained an electric baseboard heater which (a) was defectively designed, manufactured, assembled or installed, causing it to short, and/or (b) failed to contain a double high limit thermostat switch. The Bastians further allege that as a direct and proximate cause of the above unreasonably dangerous condition(s) a fire occurred suddenly and without warning within the home on December 30, 1982 and destroyed the home and its contents.

In *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965), the Illinois Su-

preme Court adopted the doctrine of strict liability in tort as set out in the Restatement (Second) of Torts.[1]

The *Suvada* court stated that liability for a defective product extended to a manufacturer, one who holds himself out to be a manufacturer, a seller, a contractor, a supplier, the assembler of parts and the manufacturer of a component part. *Suvada* at 617, 210 N.E.2d 182.

Wausau, in seeking dismissal of count I of the complaint contends that a home is not a "product" for purposes of strict liability. Although the Illinois Supreme Court has not defined specifically a "product" for purposes of strict liability in tort, the Illinois Appellate Court for the First District has repeatedly stated that the public policies underlying strict liability, rather than a dictionary definition, should determine what is a product. *Lowrie v. City of Evanston*, 50 Ill.App.3d 376, 384, 8 Ill.Dec. 537, 542, 365 N.E.2d 923, 928 (1st Dist. 1977); *Trent v. Brasch Mfg. Co., Inc.*, 132 Ill.App.3d 586, 87 Ill.Dec. 784, 787, 477 N.E.2d 1312, 1315 (1st Dist.1985); *Heller v. Cadral Corp.*, 84 Ill.App.3d 677, 40 Ill.Dec. 387, 388, 406 N.E.2d 88, 89 (1st Dist.1980); *Immergluck v. Ridgeview House, Inc.*, 53 Ill.App.3d 472, 11 Ill.Dec. 252, 253, 368 N.E.2d 803, 804 (1st Dist.1977).

■ The policy issues to be considered in imposing strict liability include (1) the public interest in human life and health, *Suvada v. White Motor Co.*, 32 Ill.2d 612, 619, 210 N.E.2d 182, 186 (1965), (2) the invitations and solicitations of the manufacturer to purchase the product, *id.*, 210 N.E.2d at 186, (3) the justice of imposing the loss on the manufacturer who created the risk and reaped the profit by placing the product in

---

**1.** Restatement (Second) of Torts, sec. 402A (1965), provides:

(1) One who sells by any product in a defective condition unreasonably dangerous to the user or consumer or his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

the stream of commerce, *id.*, 210 N.E.2d at 186, and (4) the superior ability of the commercial enterprise to distribute the risk of injury proximately caused by the defective condition of its product by passing the loss on to the public as a cost of doing business, *Trent*, 87 Ill.Dec. at 787, 477 N.E.2d at 1315. In *Immergluck*, the court recognized an additional policy consideration: the disparity in position and bargaining power which forces the consumer to depend entirely on the manufacturer, and the difficulty of requiring the injured party in consumer products cases to trace back along the channel of trade to the source of production in the search for the origin of the defect in order to prove negligence. *Immergluck*, 11 Ill.Dec. at 253, 368 N.E.2d at 804, citing *LaRossa v. Scientific Design Co., Inc.*, 402 F.2d 937, 942 (3d Cir.1968). Whether the "product" is in the stream of commerce is also relevant. *Immergluck*, 11 Ill.Dec. at 253, 368 N.E.2d at 804.

Based on section 402A of the Restatement, and the above policy issues, the Illinois Appellate Court for the First District has held that certain "buildings" are not "products" for purposes of strict liability in tort. In *Lowrie*, the court held that an open-air parking garage and its parking spaces were not "products" for strict liability purposes. In *Heller*, a condominium was held not to be a "product." In *Immergluck*, it was held that neither a sheltered care facility nor the defendant's services constituted "products" for strict liability purposes. However, in each of these three cases, and in *Trent*, the court noted that jurisdictions which have applied strict liability to a building have done so in the context of mass-produced homes and/or have focused on a defective product within the home rather than the home itself. *See e.g., Kriegler v. Eichler Homes, Inc.*, 269 Cal. App.2d 224, 74 Cal.Rptr. 749 (1969); *State Stove Manufacturing Company v. Hodges*, 189 So.2d 113 (Miss.), *cert. denied*, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1966); *Worrell v. Barnes*, 87 Nev. 204, 484 P.2d 573 (1971); *Schipper v. Levitt & Sons*, 44 N.J. 70, 207 A.2d 314 (1965).

The instant case is distinguishable from the Illinois cases in which the court found no "product" for strict liability purposes. Here the plaintiffs' home is a mass-produced prefabricated factory-built home, as opposed to the single open-air parking garage in *Lowrie* and the single sheltered care facility in *Immergluck*. In *Heller*, there was no mass production over which to distribute the risk of injury as there is in the instant case. Further, the plaintiff in *Heller* alleged no personal harm but rather alleged and sought damages for a defect in workmanship or materials. In the instant case the plaintiffs have alleged the loss of real and personal property.

Wausau allegedly designed, packaged, constructed and sold the home to the plaintiffs. Assumably, Wausau advertised or otherwise invited and solicited the purchase of the home. There is a disparity in position and bargaining power between Wausau and the home buyer that forces the buyer to depend on Wausau to provide a safe and suitable house for use as a home. The plaintiffs have alleged that the unreasonably dangerous condition(s) associated with electric baseboard heater installed in the home directly and proximately caused the fire that destroyed their property. Wausau, as a builder-vender of mass-produced homes, is in the better economic position to bear the loss by passing the loss on as a cost of doing business than the injured plaintiff homeowners. Consequently, based on section 402A of the Restatement and the policy issues that have been identified by the Illinois Appellate Court, this court must view the plaintiffs' allegations as having stated a claim for strict liability in tort.

## II.

In count II of the complaint the plaintiffs allege that Wausau breached an express warranty contained in the sales contract, as evidenced by an assignment contract for loan proceeds attached to the complaint. An examination of the assignment contract reveals no express warranty that the home is free from defects caused

by faulty materials or workmanship supplied by the seller. Plaintiffs failed to attach the sales contract to the complaint.

Even if the sales contract had been properly alleged and incorporated into count II of the complaint, the complaint would still have been fatally defective. Paragraph 7A of the sales contract provides: [2]

> Seller warrants to Buyer that from the date of final invoice supplied by Seller and for one (1) year thereafter Seller will repair or replace (or pay the reasoable cost of such repair or replacement, at its option) any defects in such home caused by faulty materials or workmanship supplied by Seller under this contract.... NO PERFORMANCE OF THIS WARRANTY WILL BE MADE BY SELLER UNTIL SELLER HAS RECEIVED PAYMENT IN FULL FROM BUYER.

(Emphasis in original.) Pursuant to the assignment contract Wausau was to be paid three days after the July 13, 1979 signing of the assignment contract. The sales contract warranty would then have lapsed on July 16, 1980, approximately one and one-half years prior to the date of the fire.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss count I is denied and defendant's motion to dismiss count II is granted.

---

**2.** The sales contract was attached to plaintiffs'   answer to the motion to dismiss.