**Max FIRKIN, Plaintiff,**

**v.**

**U.S. POLYCHEMICAL CORPORATION, a Corporation, and Labelle Printing, Defendants.**

**No. 91 C 3660.**

United States District Court, N.D. Illinois, E.D.

Sept. 2, 1993.

Patricia R. Morton, McKenna, Storer, Rowe, White & Farrug, Wheaton, IL, for defendant Labelle Printing Co. Ltd.

Philip Harnett Corboy, Jr., Corboy & Demetrio, Chicago, IL, for plaintiff Max Firkin.

*MEMORANDUM OPINION AND ORDER*

ZAGEL, District Judge.

Plaintiff Max Firkin filed a complaint sounding in negligence and strict liability against LaBelle. The defendant, LaBelle Printing, moves for summary judgment on all counts, contending it is the wrong defendant. Alternatively, LaBelle seeks summary judgment on the strict liability count, claiming it provided a service, not a product.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In determining whether there are genuine issues of material fact, we draw all inferences in the light most favorable to the nonmovant." *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). Because defendant LaBelle is moving for summary judgment, this Court draws all inferences in the light most favorable to the plaintiff.

## II. BACKGROUND

Plaintiff worked as a janitor for Wisconsin Can Company, n/k/a Rland, Inc. ("Wisconsin Can"). On December 7, 1989, plaintiff received burns to seventy percent of his body as a result of a fire in the locker room at Wisconsin Can. The fire occurred while plaintiff attempted to clean the locker room floor. Apparently, plaintiff applied a degreasing agent to the floor. Finding the degreasing agent ineffective, plaintiff applied a second product, and the floor ignited. Plaintiff claims the second product he used was Polychem 401 manufactured by U.S. Polychemical. He asserts that LaBelle manufactured the product label for Polychem 401 and that he read and relied on the information on the product label. Plaintiff says that during the printing of the label, LaBelle incorrectly omitted the large printed word "flammable." Plaintiff claims that LaBelle's omission caused him to believe the product was non-flammable and therefore not dangerous to apply on top of the degreasing agent.

## III. CHOICE OF LAW

Because this Court's jurisdiction is based on diversity, the fist issue is which state's law applies. Neither party addresses this issue.[1] A federal court sitting in diversity must apply the forum state's choice of law rules. *International Adm'rs. v. Life Ins.*, 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). In Illinois, the most significant relationship test determines the choice of law in tort cases. *Miller v. Long Airdox Co.*, 914 F.2d 976, 978 (7th Cir.1990). The most significant relationship test "seeks to find which state bears the most significant relationship to the occurrence and the parties involved in the action." *Id.* There is a presumption that the law of the state in which the injury occurred will govern unless another state has a more significant relationship to the occurrence or to the parties. *Id.* Here, the two states with the most significant relationship to the case are Illinois and New York. The injury occurred in Illinois. The plaintiff is from Illinois. Defendant's state of incorporation is New York. Because the injury occurred in Illinois and the plaintiff is domiciled in Illinois, defendant's status as a New York corporation does not overcome the presumption in favor of Illinois. Therefore, the substantive law of Illinois governs this case.

## IV. LABELLE OR LABELLE

Defendant first argues that it is not a proper defendant in this action. Additionally, defendant asserts that "plaintiff has failed to sue, serve, and obtain the jurisdiction of this Court over the entity that printed certain labels for Polychem." LaBelle's argument is based on its relatively recent incorporation. When U.S. Polychemical ordered the labels in question from LaBelle, LaBelle was a sole proprietorship. Specifically, it was Robert Schweizer d/b/a LaBelle Printing. On July 23, 1991, LaBelle Printing incorporated, with Robert Schweizer named as president. When plaintiff filed suit it named "LaBelle Printing" as a defendant. LaBelle Printing Ltd. appeared and answered "on behalf of the defendant." And, LaBelle Printing Ltd. has acted as if it were a properly named defendant throughout this case by propounding and answering discovery. Now LaBelle Printing Ltd. maintains that it is the wrong defendant, and that Robert Schweizer d/b/a LaBelle Printing is the proper defendant. Moreover, LaBelle says the statute of limitations has run and plaintiff can no longer bring suit against Robert Schweizer doing business as LaBelle Printing.

The law is not on LaBelle's side. "[S]uccessor corporate liability is determined under the choice of law provisions for products liability." *Kramer v. Weedhopper of Utah, Inc.*, 204 Ill.App.3d 469, 149 Ill.Dec. 807, 810, 562 N.E.2d 271, 274 (1990). Under Illinois law, a corporation is liable for the debts and liabilities of its predecessor if it is "merely a continuation of the seller." *Id.* LaBelle argues that corporate successor liability rules apply only in corporate to corporate or partnership to corporate transfers.

1. Plaintiff cites Illinois law. Defendant cites cases from various jurisdictions, making no reference to which law it believes is controlling.

Not surprisingly, there is little case law on this issue.

In *Plaza Express Co. v. Middle States Motor Freight, Inc.*, 40 Ill.App.2d 117, 189 N.E.2d 382, 385 (1963), an individual proprietor transferred all of its assets to a corporation in exchange for a majority of stock. The court held that the rule of assumption of liability was applicable regardless of whether the business was originally conducted by an individual or a corporation. *Id.* Other state courts that have addressed this issue have found that the composition of the prior business entity has no bearing on the application of corporate liability laws.[2] Additionally, policy considerations alone militate against allowing an individual to escape liability by incorporating. LaBelle Printing Ltd. with Robert Schweizer as president is merely a continuation of Robert Schweizer d/b/a LaBelle Printing. Therefore, it is the proper defendant in this action.[3]

LaBelle Printing Ltd. also fails on its argument attacking this Court's jurisdiction and the adequacy of service. Rule 12(h) of the Federal Rules of Civil Procedure states: "A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived" if it is not raised in a motion pursuant to Rule 12. Hence, because LaBelle did not raise these matters in a Rule 12 motion they are waived.

## V. PRODUCT OR SERVICE

The second issue raised by LaBelle is whether the labels it provided were a product or a service. LaBelle contends the labels were a service to U.S. Polychemical and that strict liability is therefore inappropriate. This presents an interesting question on which there is no case law directly on point. Therefore, this Court must look to the criteria used by Illinois courts to categorize products and services and apply the criteria to the facts presently before the Court.

Under Illinois law, "[a]n item will be considered a product for purposes of the cause of action if to do so will effectuate the policy basis for imposing strict liability in tort." *Board of Educ. v. A, C and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). Accordingly, "the social policy justifications underlying the adoption of strict liability, rather than a dictionary definition of the term product, should be determinative of that issue." *Trent v. Brasch Mfg. Inc.*, 132 Ill.App.3d 586, 87 Ill. Dec. 784, 787, 477 N.E.2d 1312, 1315 (1985). Some of the policy considerations to be considered include: 1) the public interest in life and health; 2) the invitations and solicitations of the manufacturer to purchase the product; 3) the justice of imposing the loss on the manufacturer who created the risk and reaped the profit; 4) the superior ability of the commercial enterprise to distribute the risk of injury as a cost of doing business; 5) the disparity in position and bargaining power that forces the consumer to depend entirely on the manufacturer; 6) the difficulty in requiring the injured party to trace back along the channel of trade to the source of the defect in order to prove negligence; and 7) whether the product is in the stream of commerce. *Id.*, 87 Ill.Dec. at 787, 477 N.E.2d at 1315 (citations omitted). These considerations, when viewed in the context of this case, support the conclusion that LaBelle's labels are products.

First, the public interest in life and health favors the imposition of strict liability here given the severity of the injury involved. Second, excluding the unsupported conclusions of each party, there is nothing in the record that demonstrates whether La-

2. *Soo Line R. Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472, 1483 (D.Minn.1992) (rejecting the argument that corporate successor liability "only applies between corporations, and not between a corporation and a business entity of a different form"); *Tift v. Forage King Indus., Inc.*, 108 Wis.2d 72, 322 N.W.2d 14, 14 (1982) (finding it "irrelevant that the predecessor business organization was a sole proprietor rather than a corporation"); *Rawlings v. D.M. Oliver, Inc.*, 97 Cal. App.3d 890, 159 Cal.Rptr. 119, 124 (1979) (finding it "not conceptually significant" that the predecessor manufacturer was a sole proprietor rather than a corporation).

3. Plaintiff is instructed to submit the appropriate amended pleading to change the complaint caption from LaBelle Printing to LaBelle Printing Co., Ltd.

Belle did or did not solicit U.S. Polychemical to purchase its product. Hence, this consideration does not favor either party. The third consideration "hinges on whether the party in question has any participatory connection, for personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance upon the product." *Bittler v. White Inc.*, 203 Ill.App.3d 26, 148 Ill.Dec. 382, 384, 560 N.E.2d 979, 981 (1990). Undoubtedly, LaBelle's participatory connection with the injury-causing product reaped it a profit. Warning labels are an essential part of dangerous chemical solvents. LaBelle's brief illuminates this point when it cites comment (f) of the Restatement (2d) of Torts, Sec. 402A (1965), which states: "One who enters into the business of supplying the general public with products, which may be dangerous, assumes a special responsibility for the public's safety." When LaBelle chose to print warning labels rather than letterhead, it assumed a special responsibility. Warning labels can be extremely dangerous when they provide wrong or inadequate information upon which the user will undoubtedly rely. Thus, because LaBelle chose to enter this field of printing and reaped a profit, it is just to impose on LaBelle the loss resulting from its enterprise.

Fourth, because LaBelle is a commercial enterprise and the plaintiff is an individual, it has superior ability to distribute the risk of injury as a cost of doing business. Fifth, the plaintiff was forced to rely entirely on the information contained in the warning label manufactured by LaBelle. Sixth, in this case, like many other in which multiple commercial entities contribute to a final product, it is inequitable to force an injured party to trace the defect to the negligent contributor. LaBelle states it printed the warning labels pursuant to the specifications provided by U.S. Polychemical. Perhaps U.S. Polychemical is at fault; perhaps LaBelle is at fault. Regardless of who is at fault, a party injured by a dangerously defective product is entitled to compensation for his injuries. The commercial entities that produced the injury-causing product can argue about indemnity.

Lastly, LaBelle argues that it did not place its labels into the stream of commerce. "[T]o be in the stream of commerce does not require that the product be mass-produced or placed on the shelf at numerous locations. It is sufficient if the defendant is engaged in the business of selling the product...." *Skarski v. Ace-Chicago Great Dane Corp.*, 138 Ill.App.3d 301, 93 Ill.Dec. 102, 106, 485 N.E.2d 1312, 1316 (1985). A defendant need not participate in the chain of distribution of a manufactured product to be strictly liable. *Gilliland v. Rothermel*, 83 Ill.App.3d 116, 38 Ill.Dec. 528, 530, 403 N.E.2d 759, 761 (1980). "Participation in the profits from placing a defective product in the stream of commerce 'present[s] the same public policy reasons for the application of strict liability which supported the imposition of such liability on wholesalers, retailers and lessors.'" *Id.* (quoting *Connelly v. Uniroyal Inc.*, 75 Ill.2d 393, 410–11, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979)). After considering the applicable policy justifications, this Court finds that LaBelle provided a product and strict liability is appropriate.

The only Illinois case even remotely on point that LaBelle cites to rebut this overwhelming indication that it provided a product is *Appleby v. Miller*, 197 Ill.App.3d 533, 143 Ill.Dec. 838, 554 N.E.2d 773 (1990), *cert. denied*, 133 Ill.2d 551, 149 Ill.Dec. 315, 561 N.E.2d 685 (1990).[4] In *Appleby* the defendant provided a medical form for a dentist to use during patient intake. The plaintiff alleged the form was defective in that it did not adequately address the patient's medical history. The plaintiff claimed she received inappropriate treatment because the dentist relied on the incomplete intake information. The *Appleby* court found the form to be a

4. LaBelle emphasizes a hypothetical used by the court in a case interpreting Connecticut law. Besides the fact that the case is not binding on this Court, it is also inapposite. The court stated that "in a situation where a professional renders individualized services, such as an architect who designs a single set of plans and specifications for a single building, the imposition of strict products liability would clearly be inappropriate." *Halstead v. United States*, 535 F.Supp. 782, 791 (D.Conn.1982), *aff'd*, 707 F.2d 671 (2nd Cir. 1983). LaBelle did not provide one label for one container. It provided many labels for many products.

service to the dentist rather than a product subject to strict liability. The Court reasoned that "[g]iven the generality of the questions and the brevity of the form, we find that it would be unreasonable to expect that the form was intended to be a comprehensive inquiry as to a patient's medical history." *Id.* 143 Ill.Dec. at 841, 554 N.E.2d at 776. LaBelle's warning label, by contrast, was not a brief, general product warning to be supplemented by expert opinion. It was the complete and exclusive warning available, and it was not directed to an expert in the field but to the end user. In sum, it was not a service to U.S. Polychemical but, rather, a warning provided to the user.

## VI. CONCLUSION

Illinois law provides the substantive law for this cause of action because Illinois has the most significant relationship to the case. Under Illinois law, LaBelle Printing Ltd. is a successor corporation to Robert Schweizer d/b/a LaBelle Printing. As such, it is the proper defendant in this action. Additionally, LaBelle has waived its objection to personal jurisdiction and service by not raising these issues in a Rule 12 motion. Finally, labels provided by LaBelle are a product and strict liability is therefore applicable.

For the foregoing reasons, LaBelle's motion for summary judgment is denied.