[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Presently before the court is the apportionment defendant's motion for summary judgment. Apportionment defendant, Landis 
Gyr Powers, Inc.[1] (hereinafter, "Landis Gyr"), now moves for summary judgment against Jansen Rogan on the ground that count six of the apportionment complaint fails to comply with the requirements of § 52-102b.[2] Specifically, Landis Gyr argues that because it is a product seller, any claims against it must be brought pursuant to the Connecticut Products Liability Act, (hereinafter "CPLA") which is the exclusive remedy available for actions involving product liability. Such an action, Landis 
Gyr argues, does not allow for apportionment of liability.
 I. FACTUAL BACKGROUND
The relevant facts for the disposition of the motion are as follows. ACMAT Corporation (hereinafter ""ACMAT") owns the former New Britain Bank Office Building on Main Street in New Britain. On or about January 16, 1989, ACMAT and Russell Dawson Architecture and Engineering (hereinafter "Russell Dawson") CT Page 11840 entered a contract under which Russell Dawson would provide professional advice for the design and construction of the heating, ventilation and air conditioning (hereinafter "HVAC") system. Russell Dawson contracted with Jansen Rogan Consulting Engineers, P.C. (hereinafter, "Jansen Rogan") to assist it in fulfilling its obligations to ACMAT. ACMAT contracted with Landis Gyr to obtain the provision of an automatic temperature control system to operate with the HVAC system provided by Russell Dawson.
ACMAT, as the assignee of any claims of Russell 
Dawson,[3] on June 11, 1996, in a five count complaint, brought suit against the defendant, Jansen Rogan, alleging that Jansen Rogan breached its contract for engineering services with Russell Dawson by negligently performing the contracted engineering services.
On October 16, 1996, Jansen Rogan filed an apportionment complaint pursuant to General Statutes §§ 52-102b and 52-572h
against several apportionment defendants, including Landis Gyr. In count six of the apportionment complaint, Jansen Rogan claims that Landis Gyr had a contract with ACMAT to work on the HVAC system of a building owned by ACMAT. (Apportionment Complaint, 10/01/96, Count Six, ¶¶ 2-3.) Referring to ACMAT's complaint, Jansen Rogan also alleges that sometime after the work was completed, ACMAT became dissatisfied with the HVAC system. Also, Jansen Rogan alleges that "ACMAT has claimed in the aforementioned [c]omplaint that Jansen Rogan is responsible, either in negligence or in contract, for problems with the HVAC systems" (Apport. Compl., 10/01/96, Count Six, ¶ 5.) and that "Landis Gyr is or may be liable to the plaintiff, ACMAT, in whole or in part, for ACMAT's damages as alleged in the aforesaid [c]omplaint." (Apport. Compl., 10/01/96, Count Six, ¶ 7.)
Thereafter, on January 14, 1997, ACMAT filed an amended complaint in which it realleged the negligence and breach of contract claims against Jansen Rogan and added an additional negligence claim against Landis Gyr. Count one of the amended complaint states that Jansen Rogan entered into a contract with Russell Dawson for the overall schematic design work for the rehabilitated and new HVAC systems in a building owned by ACMAT. (Amended Compl., 12/26/96, Count One, ¶¶ 5, 7). In performing its services, Jansen Rogan was purportedly responsible for providing "the technical information for the HVAC design, while Russell Dawson coordinated this information and incorporated it CT Page 11841 into final drawings and specifications for use by ACMAT and its subcontractors and suppliers." (Amended Compl., 12/26/96, Count One, ¶ 9.) ACMAT further claims that Jansen Rogan "continually failed to provide adequate design and specifications of the HVAC systems; . . . continually failed to detect defects in the design and specifications; . . . continually failed to warn ACMAT of, and continually failed to correct, the consequences of their errors, omissions and inadequacies in the design and shop drawing review of the HVAC systems; . . . continually failed to correct the consequences of improper design and shop drawing review once notified of the problems encountered by ACMAT in the [b]uilding; . . . continually failed to assist ACMAT in formulating and undertaking effective remedial steps to properly correct the consequences of the improper design and shop drawing review; and . . . [Jansen Rogan] undertook to perform engineering assignments on the [b]uilding, including the pre-purchase specifications of certain HVAC systems components, without first fully performing all necessary field inspections." (Amended Compl., 12/26/96, Count One, ¶ 15.) For these reasons, ACMAT contends that it has incurred out-of-pocket expenses in making the HVAC system operational. (Amended Compl., 12/26/96, Count One, ¶ 16.)
Count six of the amended complaint, which ACMAT withdrew on May 17, 1999, incorporated paragraphs one through fifteen of count one and further alleged that Landis Gyr was negligent in performing the contract with ACMAT "to provide the automatic control system for the HVAC systems for ACMAT's building." (Amended Compl., Count Six, ¶¶ 16, 19.) Count six also alleged that because Landis Gyr provided a defective and improper temperature control system, ACMAT cannot "properly and effectively control the HVAC systems and the temperature of its building."[4] (Amended Compl., 12/26/96, Count Six, ¶ 18.)
 II. ISSUES PRESENTED
The issue in dispute presented in this case is whether or not the apportionment plaintiff's complaint gives rise to a cause of action that can be apportioned under § 52-102b. Specifically, the court must decide whether providing the HVAC system and/or its components is a service pursuant to which a negligent claim may be filed; or whether it is the selling of a product for which a products liability action must be brought.
Landis Gyr contend that it is a product seller, as a matter of law, and therefore, the apportionment complaint cannot be CT Page 11842 brought against it. Jansen Rogan counters that whether or not an entity is a product seller under the CPLA is an issue of fact which should not be resolved in a motion for summary judgment.
This court is not persuaded to adopt either of these conclusions. For reasons more fully set forth in this decision, this court holds that Landis Gyr is not a product seller, as a matter of law.
 III. LEGAL DISCUSSION
A. Summary Judgment
"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Serranov. Burns, 248 Conn. 419, 424, 727 A.2d 1276 (1999). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban Development Commissions,158 Conn. 364, 378, 260 A.2d 596 (1969). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Hertz Corp. v. Federal Ins. Co.,245 Conn. 374, 381, 713 A.2d 820 (1998). Furthermore, "[a] directed verdict may be rendered only where . . . the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Internal quotation marks omitted.)Miller v. United Technologies Corp., 233 Conn. 732, 752,660 A.2d 810 (1995)
 B. Apportionment Statute and the Connecticut Products Liability Act
General Statutes § 52-102b, provides for apportionment only where the underlying action is predicated on negligence. General Statutes § 52-572m et seq.[5], provides the exclusive remedy against a product seller for damages arising from the manufacture and installation of a product. Landis Gyr CT Page 11843 maintains that its contract with ACMAT was limited to the manufacture and installation of the automatic temperature control system for the HVAC system, in other words, the furnishing of a product. Therefore, Landis Gyr concludes, it and Jansen Rogan could only be liable to ACMAT for products liability and breach of contract, theories under which apportionment may not be sought pursuant to § 52-102b.
In its memorandum in opposition, Jansen Rogan responds that the amended complaint and the apportionment complaint each sound in negligence. It also argues that Landis Gyr contracted with ACMAT to provide services and that neither an HVAC system nor its components are products. Jansen Rogan concludes that it properly impleaded Landis Gyr as an apportionment defendant pursuant to §§ 52-102b and 52-572h[6].
General Statutes § 52-102b provides the procedural vehicle by which a defendant in a negligence action may cite in a party for apportionment of liability purposes. Bhinder v. SunCo., 246 Conn. 223, 231, 717 A.2d 202 (1998). Section (a) of § 52-102b provides in relevant part:
 Any defendant in any civil action to which section 52-572h
applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability.
Subsection (f) further provides that § 52-102b "shall be the exclusive means by which a defendant may add a person who is or may be liable pursuant to section 52-572h for a proportionate share of the plaintiff's damages as a party to the action.
"Thus, the statute unambiguously provides that a defendant may implead apportionment defendants under § 52-102b only if they are liable on a negligence basis pursuant to § 52-572h."Paul v. McPhee Electrical Contractors, 46 Conn. App. 18, 21,698 A.2d 354 (1997). "By its own terms, the comparative negligence statute [General Statutes § 52-572h] applies only to causes of action based on negligence." (Internal quotation marks omitted.) Bhinder v. Sun Co., supra, 246 Conn. 231. Whereas, "[a] product liability claim is exclusively controlled by §52-572m et seq.[7] [the products liability statute], and thus can never be a claim arising under § 52-572h." Paul v. McPheeCT Page 11844Electrical Contractors, supra, 46 Conn. App. 21.
In determining whether a case is a negligence action, "§52-102b clearly states that the relevant claim sounding in negligence is the plaintiff's." Hurst v. Kingsland Co., Superior Court, judicial district of Litchfield, Docket No. 072465 (October 2, 1997, Pickett, J.), see also Strohecker v.Trailmobile Group of Companies, Ltd., Superior Court, judicial district of Waterbury, Docket No. 138776 (May 22, 1998,Pellegrino, J.)
Count one of ACMAT's amended complaint clearly alleges a common law negligence claim against Jansen Rogan.[8] Besides alleging generally that "Jansen Rogan [was] negligent in the performance of [its] professional obligations and duties owed to ACMAT and Russell Dawson by contract", ACMAT specifically alleges particular negligent acts for which Jansen Rogan purportedly is responsible. (Amended Compl., 12/26/96, Count One, ¶ 15.) Although count six of Jansen Rogan's apportionment complaint could have been pleaded more clearly, it sufficiently meets the requirements of § 52-102b.
Nowhere in the underlying complaint did ACMAT allege that it is proceeding against Jansen Rogan solely on the breach of contract claims; nor did Jansen Rogan in the apportionment complaint allege that it was proceeding against Landis Gyr solely on a breach of contract claim.[9] Nevertheless, Landis 
Gyr argues that as the manufacturer and installer of the automatic temperature control system, it is a product seller under §§ 52-572m (a) and (b). Thus, it claims that regardless of the language of the complaint, it may only be liable for ACMAT's injuries, if at all, based on a product liability or breach of contract theory, not negligence.
Landis Gyr cites several cases for the proposition that whether a claim is based on product liability or negligence depends on the substance of the allegations and not on the language used in the complaint. See Plateroti v. Sylvan KnollSection I, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 161060 (September 29, 1998, Karazin, J.) (no impleader of swing set manufacturer under § 52-102b on product liability theory); Gargano v. Entoleter, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 391522 (January 8, 1998, Blue, J.) (no impleader of oil drum manufacturer under § 52-102b on product liability theory);Gadarowski v. Sabrina Pools, Inc., Superior Court, judicial CT Page 11845 district of Windham at Putnam, Docket No. 054231 (July 24, 1997,Sferrazza, J.) (no apportionment in negligence under §52-102b, where underlying claim is product liability); Allard v.Liberty Oil Equipment, Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. 562255 (March 7, 1997, Lavine,J.) (no impleader of tank and ladder manufacturer under §52-102b on product liability theory).
These cases, however, do not support Landis Gyr's argument. In none of these cases was the court called upon to determine whether the instrumentality in question was a "product" as that term is used in the product liability act, nor does it appear that the parties themselves disputed these facts. The court in each action assumed that the respective instrumentality, whether a swing set, oil drum or tank and ladder, was a product and that each apportionment defendant was a manufacturer or seller of such within the meaning of § 52-572m et seq.
Neither Landis Gyr nor Jansen Rogan have cited any Connecticut cases in which a court has considered the issue of whether an HVAC system or an automatic temperature control system is a product or whether a manufacturer or seller of such is a product seller for the purposes of a product liability action. This court has found no such cases in Connecticut, either.[10]
For the reasons stated herein, the court finds that Landis 
Gyr is not a product seller for purposes of the CLPA.
1. "Product", Under the CLPA
The Product Liability Act does not define what constitutes a product. Hines v. JMJ Construction Co., supra, Superior Court, Docket No. 506329. "However, the [Uniform Product Liability Act], on which the Connecticut Act is based, defines `product' as any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." (Internal quotation marks omitted.) Hines v. JMJ Construction Co., supra, Superior Court, Docket No. 506329. Rather than rely on the UPLA definition of "product", which is not specifically adopted in the CPLA, Connecticut courts have turned to defining "product" through case law. Id. and Lang v. Brom, Superior Court, judicial district of New Haven at New Haven, Docket No. 96-0369766 (February 3, 1998,Hartmere, J.) "Courts have defined [product] as any item, thing, or commodity which, upon acquiring its physical existence and identity, through the process of manufacture or otherwise, is put CT Page 11846 in the stream of commerce either by sale, for use, consumption or resale or by lease or bailment." (Citations omitted; internal quotation marks omitted.) New England Variety Distributors. Inc.v. Alarm Sec. Protection Co., Inc., supra, Superior Court, Docket No. 545381.
Courts in other jurisdictions have considered the issue of whether the HVAC system is a product within the meaning of their state's product liability statute. Fennell v. Nesbitt, Inc.,154 Mich. App. 644, 398 N.W.2d 481 (1986) and Trent v. Brasch Mfg.Co., Inc., 132 Ill. App.3d 586, 477 N.E.2d 1312 (1985). TheFennell court ruled that an HVAC system was an improvement to real property within the meaning of Michigan's engineers and architect's statute, and not a product under the Michigan product liability statute. Fennell v. Nesbitt, Inc., supra, 154 Mich. App. 651. The Trent court, while not deciding the issue, stated that "it does not necessarily follow, however, from the premise that `buildings' are not `products' that an item, such as the HVAC in the instant case, which has become attached to a building cannot be found to be a `product' for purposes of strict liability in tort." Trent v. Brasch Mfg. Co., Inc., supra,132 Ill. App.3d 591.
This court finds that the HVAC system and its components are manufactured items. Therefore, Landis Gyr may well be able to prove to a trier of fact that the HVAC system and its components are products. Consequently, the factual issue of whether the HVAC system and its components are products is one in dispute. Thus, this court must turn next to address the question of whether or not Landis Gyr is a product seller.
2. "Product Seller", under the CLPA
Whether an entity is a product seller is an issue that may be determined by the court, as a matter of law. See, Burkett v.Petrol Plus of Naugatuck, 216 Conn. 65, 72, 579 A.2d 26 (1990);New England Variety Distributors. Inc. v. Alarm Sec. ProtectionCo., Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. 545381 (September 25, 1998, Peck, J.); Shawv. Jason Soda Systems. Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 402436 (September 18, 1998,Zoarski, J.); Lang v. Brom Builders, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 369766 (February 3, 1998, Hartmere, J.) In order to make this determination, the court must turn to the definition found in the CPLA. CT Page 11847
A "`product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption." General Statutes § 52-572m
(a). A manufacturer includes "product sellers who design, assemble, fabricate, construct, process, package or otherwise prepare a product or component part of a product prior to itssale to a user or consumer. (Emphasis added.) General Statutes § 52-572m (e). The term "includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." Id.
"[T]he [Uniform Product Liability Act] excluded from the definition of a `product seller' [a] provider of professional services who utilizes or sells products within the legally authorized scope of its professional practice and [a] nonprofessional provider of services is not included unless the sale or use of a product is the principal part of the transaction, and the essence of the furnishing of judgment, skill, or services. . . ." Hines v. JMJ Construction Co., supra, Superior Court, Docket No. 506329.
"Where the contract is basically one for the rendition of services, and the materials are only incidental to the main purpose of the agreement, the contract is not one for the sale of goods". Gulash v. Stylorama, 33 Conn. Sup. 108, 111,364 A.2d 1221 (1975). "Once a particular transaction is labeled a `service,' as opposed to a `sale' of a `product,' it is outside the purview of our product liability statute." Zichichi v.Middlesex Memorial Hospital, 204 Conn. 399, 403, 528 A.2d 805
(1987). In short, the doctrine of strict liability does not extend to include liability of persons rendering services. Id. Therefore, whether one is to be deemed a product seller, as a matter of law, depends largely on the nature of the contractual transaction.
In support of its argument that it is a seller of a product under the product liability act, Landis Gyr offered the affidavit of Russell Tanguay, operations manager for Landis 
Gyr, who "was involved in the day-to-day involvement of the subcontract [work] performed at the Acmat Building." (Tanguay Affid., 2/18/99, ¶ 5.) Tanguay attested that "Landis' scope of work was to manufacture certain parts for the modification to Acmat's HVAC system, to assemble other manufacturer's parts into the Landis equipment, to install the equipment in the building, CT Page 11848 test the equipment, label the equipment as Landis manufactured equipment and to provide the operating instructions for the use of said equipment."[11] (Tanguay Affid., 2/18/99, ¶ 6.)
While this affidavit is somewhat helpful in unraveling the tangled web of factual issues, the language of Landis Gyr's contract with ACMAT provides a more complete understanding of Landis Gyr's contractual responsibilities. The contract provided that "[Landis Gyr] shall furnish . . . all plant, labor, materials, supplies and equipment to perform such work . . . The work includes [a]utomatic temperature controls in accordance with Landis Gyr Powers, Inc. proposal dated October 27, 1989, No. J-281R . . . submittals of controls, drawings diagrams to Russell and Dawson for approvals and provid[ing] a complete operating system for this project." Landis Gyr's proposal offered "to furnish and install a Landis Gyr Powers, Inc. environmental control, energy management and/or building automation system." An attached "List of Clarifications", which was incorporated into, the contract, provides further evidence that Landis Gyr was hired for its judgment and expertise. The list specified the actual work for which Landis Gyr would be responsible under the contract, including monitoring room air, outside air, mixed air, and supply air discharge temperatures, in addition to monitoring fan status, low and high temperatures, pump status, and hot and chilled water temperatures and monitoring the differential pressure of water temperatures. The contracted work also included submittals and as-built diagrams, electrical installation guidelines, and programming. These monitoring and engineering services far surpass the mere selling or manufacturing of a product.
Nowhere in the contract between Landis Gyr and ACMAT does it state or indicate that the contract is merely for the sale of a good or an already manufactured temperature control system. Thus, this court holds that the apportionment defendant will not be able to establish that the contract was strictly for the sale of a product.
As Landis Gyr's agreement with ACMAT clearly demonstrates, Landis Gyr was hired to perform various services, not to simply sell ACMAT a product identified as an automatic temperature control system. Landis Gyr, pursuant to the agreement, was to furnish judgment and skills, in addition to building a complete temperature operating system for ACMAT's building. The "work" that Landis Gyr was required to perform is indicative of a services contract rather than a transaction in goods. Although CT Page 11849 Landis Gyr provided materials by way of purchasing and installing some parts from different manufacturers in the performance of its work, the essence of the contract was basically for the rendition of services.
3. Hybrid Sales-Service Transaction
Based upon the evidence produced for this court, the apportionment defendant, at best, will be able to establish that the transaction between Landis Gyr and ACMAT was a hybrid transaction, involving the provision of both a product and a service. The Connecticut Product Liability Act does not give clear guidance as to how a hybrid sales-service transaction should be labeled. "When distinguishing between a service and a product, some courts focus on the object of the contract. SeePaul v. McPhee Electrical Contractors, supra, 46 Conn. App. 23
(holding that an electrician who installed a light fixture was not a product seller under CPLA since there was no indication that the electrician was "involved in placing light fixtures into the stream of commerce.'); Gilbane Building Co. v. StamfordTowers, supra, Superior Court, Docket No. 118788 (holding that a construction manager was not a product seller of allegedly defective precast panels where sufficient facts were not alleged to demonstrate that the construction manager was in the business of selling precast panels); Ferguson v. EBI Medical Systems,
Superior Court, judicial district of New London, Docket No. 527663 (August 1, 1995, Hurley, J.) (15 Conn. L. Rptr. 94) (holding that a hospital rendered services, and was not a product seller, where the hospital ordered and installed an allegedly defective wrist fixator during surgery on the plaintiff, since the contract was basically one for the rendition of services and the materials used were merely incidental to the main purpose of the contract); Hines v. JMJ Construction Co., supra, Superior Court, Docket No. 506329 (holding that a subcontractor who constructed a sidewalk performed services)." New England VarietyDistributors, Inc. v. Alarm Sec. Production Co., Inc., supra, Superior Court, Docket No. 545381, 23 Conn. L. Rptr. 85.
In considering the evidence in the light most favorable to Jansen Rogan, the nonmoving party, the court holds that while it may be proven that the HVAC system and/or its components are "products" as defined by the CPLA and that the work performed by Landis Gyr under its contract with ACMAT constituted a combination of the provision of services product and the sale of goods, the hybrid transaction is dominated by the service component and not the manufacturing and furnishing of a product CT Page 11850 component. Therefore, Landis Gyr can not be deemed to be a product seller under the CPLA.
IV. CONCLUSION
For all of the above reasons, this court holds that the contract between Landis Gyr and ACMAT was not solely for the sale of a product, nor is Landis Gyr a product seller for purposes of the product liability act, General Statutes §52-572m et seq. The Apportionment Plaintiff has properly brought its Apportionment Complaint. Accordingly, the motion for summary judgment as to count six of the apportionment complaint is hereby denied.
Angela Carol Robinson, Judge, Superior Court.